IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| UNITED STATES OF AMERICA | ) |  |
|---|---|---|
|  | ) |  |
| v. | ) |  |
| DANIEL PALACIOS RODRIGUEZ, | ) | **UNDER SEAL** |
| a/k/a DANIEL HERNANDEZ; | ) | No. 1:19-MJ-286 |
| ALEXANDRA GUZMAN-BEATO, | ) |  |
| a/k/a SANDRA; | ) |  |
| ELVIS PICHARDO HERNANDEZ; | ) |  |
| JOSE DAVID REYES-GONZALEZ; | ) |  |
| JUAN RUFINO MARTINEZ-DOMINGUEZ, | ) |  |
| a/k/a CUIDO NEGRO; and | ) |  |
| FATIMA VENTURA PEREZ, | ) |  |
| a/k/a CHANEL | ) |  |
| Defendants. | ) |  |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Jeremy Obie, Special Agent of the Federal Bureau of Investigation (FBI), Washington, D.C., Field Office, Northern Virginia Resident Agency, being duly sworn, depose and state the following:

1. Your Affiant has been employed by the FBI since March 2016, and I am currently assigned to the FBI Washington Field Office Child Exploitation and Human Trafficking Taskforce. While employed by the FBI, I have investigated and participated in the execution of search warrants and/or have sworn to affidavits in support of search warrants for federal criminal violations related to counterterrorism, violent crime, international criminal enterprises, high technology or cyber-crime, missing persons, and child exploitation. I have gained experience in these violations by conducting investigations into sexual exploitation of children, as well as the distribution and receipt of child pornography. I have received training in the area of child pornography and child exploitation. Additionally, I have investigated and assisted in the

1

investigation of criminal matters involving: the sex trafficking of children, in violation of Title 18 United States Code, Section 1591; the sexual exploitation of children, in violation of Title 18, United States Code, Sections 2251, 2252, 2252A, and 2422. Moreover, I am a federal law enforcement officer authorized by the Attorney General to enforce violations of the laws of the United States including but not limited to, Title 18, United States Code, Sections 1591, 2251, 2252, 2252A, 2422 and 2423. Prior to this assignment, I worked for the Department of Defense as an Electrical Engineer. I have a Bachelors of Science and a Masters of Science in Electrical Engineering.

2. The facts and information contained in this affidavit are based upon my personal knowledge of the investigation, observations of other law enforcement officers and agents involved in this investigation, and information provided by witnesses. All observations referenced below that I did not personally make were relayed to me by the persons who made such observations.

3. This affidavit contains information necessary to support probable cause for this application. Because this affidavit is being submitted for the limited purpose of establishing probable cause for this application, I have not included every detail known to the government. Rather, I have set forth only those facts that I believe are necessary to establish probable cause.

4. I submit this affidavit in support of a criminal complaint and arrest warrant charging **DANIEL PALACIOS RODRIGUEZ ("RODRIGUEZ")**, also known as **"Daniel Hernandez,"** **ALEXANDRA GUZMAN-BEATO ("GUZMAN-BEATO")**, also known as **"Sandra,"** **ELVIS PICHARDO HERNANDEZ ("HERNANDEZ"), JOSE DAVID REYES-GONZALEZ ("REYES-GONZALEZ")**, and **JUAN RUFINO MARTINEZ-DOMINGUEZ ("MARTINEZ-DOMINGUEZ")**, also known as **"Cuido Negro,"** with sex trafficking of a

2

minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), (c) and 2, along with conspiracy to engage in sex trafficking of a minor in violation of 18 U.S.C. § 1594(c).

5. Additionally, I submit this affidavit in support of a criminal complaint and arrest warrant charging **FATIMA VENTURA PEREZ ("VENTURA")**, also known as **"Chanel"**, with coercion and enticement in violation of 18 U.S.C. §§ 2422(a) and 2, for knowingly persuading, inducing, enticing or coercing ADULT VICTIM #1 to travel in interstate commerce for purposes of prostitution.

## RELEVANT STATUTES

6. 18 U.S.C. § 1591 prohibits the sex trafficking of children or any person by force, fraud, or coercion. In relevant part, Section 1591 prohibits a person, in or affecting interstate commerce, from knowingly recruiting, enticing, harboring, transporting, obtaining, maintaining, patronizing or soliciting a person, having had a reasonable opportunity to observe the person or knowing or in reckless disregard of the fact that the person has not attained the age of 18 years old and will be caused to engage in a commercial sex act. 18 U.S.C. § 1594(c) prohibits conspiracies to engage in such conduct.

7. 18 U.S.C. § 2422(a) prohibits a person from knowingly persuading, inducing, enticing, or coercing any individual to travel in interstate or foreign commerce to engage in prostitution or in any sexual activity for which any person can be charged with a criminal offense.

## FACTUAL BACKGROUND ESTABLISHING PROBABLE CAUSE

8. Law enforcement is investigating the sex trafficking of a minor female by multiple individuals when she was 14 and 15 years old [hereinafter Minor Victim], along with the prostitution operation the individuals are engaged in.

9. Minor Victim is currently 15 years old with a date of birth in July, 2003.

10. Minor Victim has run away from her home located in the Eastern District of Virginia on numerous occasions. Most relevant to this affidavit, she ran away during the time-frame of April 2018 to October 2018 and again around mid-January 2019.

11. Law enforcement interviewed Minor Victim on multiple occasions. During the course of these interviews, Minor Victim stated she met a male known as "John Doe # 1." John Doe # 1 had sex with Minor Victim beginning when she was 14 years old. He had sex with her multiple times and paid her money for the sexual activity. One day after engaging in commercial sexual activity with Minor Victim, John Doe # 1 called his friend **Daniel** to transport Minor Victim via a "private taxi" to where she needed to go.

12. Minor Victim identified **Daniel** via photographs on Facebook. Through the photographic identification by Minor Victim, analysis of cell phone numbers, and other data, law enforcement has identified "Daniel" as **DANIEL PALACIOS RODRIGUEZ** (hereinafter "**RODRIGUEZ**").

13. After transporting Minor Victim via the private taxi, **RODRIGUEZ** obtained her contact information. He eventually told Minor Victim that he drove girls to various places for sex. **RODRIGUEZ** explained to her how his operation worked and informed Minor Victim they would split the money from the commercial sex acts. Soon after, Minor Victim began working in prostitution for **RODRIGUEZ**.

14. **RODRIGUEZ** drove Minor Victim to multiple residences in Maryland for purposes of prostitution. He also drove Minor Victim to a motel for commercial sexual activity. The first day Minor Victim worked in prostitution with **RODRIGUEZ,** he required that she pay him for gas through the money earned from prostitution. The second day Minor Victim worked

in prostitution with **RODRIGUEZ**, he required they split the commercial sex proceeds half-and-half. **RODRIGUEZ** obtained the customers for Minor Victim and coordinated prostitution dates through his cell phone. He also provided condoms for the prostitution encounters. Minor Victim also recounted a time when **RODRIGUEZ** engaged in sexual intercourse with Minor Victim in exchange for money.

15. After Minor Victim began working for **RODRIGUEZ** in prostitution, **RODRIGUEZ** connected a woman named **"Sandra"** with Minor Victim. Rodriguez indicated to Minor Victim he obtained females to work in prostitution for **Sandra.**

16. Through photograph identification by Minor Victim, analysis of cell phone numbers provided by Minor Victim, and other data, law enforcement has identified "Sandra" as **ALEXANDRA GUZMAN-BEATO** (hereinafter **"GUZMAN-BEATO"**).

17. After **RODRIGUEZ** connected **GUZMAN-BEATO** with Minor Victim, **GUZMAN-BEATO** requested photographs of Minor Victim. Once **GUZMAN-BEATO** approved of the pictures sent by Minor Victim, **GUZMAN-BEATO** told Minor Victim she would send someone over to pick her up. She sent a man named **"Elvis"** to pick up Minor Victim in Maryland and transport her to the Red Roof Inn in Alexandria, Virginia to work in prostitution. Upon arrival at the Red Roof Inn, **Elvis** walked Minor Victim to the hotel room that **GUZMAN-BEATO** had booked.

18. Minor Victim provided law enforcement photographs of the man she knew as **Elvis**. In some of the photographs, **Elvis** is seen driving Minor Victim in a car. **Elvis** has a distinct tattoo on his arm. Additional photographs show Minor Victim outside of **Elvis's** car, a white Honda, with a Maryland license plate. Further investigation by law enforcement of the

5

license plate, car, photographs, Facebook, and other information has revealed that **Elvis** is a man named **ELVIS PICHARDO HERNANDEZ** (hereinafter referred to as **HERNANDEZ**).

19. After arriving at the Red Roof Inn in Alexandria, Virginia, Minor Victim began working in prostitution. Minor Victim worked in prostitution in the hotels **GUZMAN-BEATO** rented when she was both 14 and 15 years old. There were additional females who also lived and worked in prostitution at the hotels that **GUZMAN-BEATO** rented. The only days off for the females who worked in prostitution for **GUZMAN-BEATO** were during the week of their menstrual periods.

20. Minor Victim stated **GUZMAN-BEATO** often only rented one hotel room so two of the girls would have to hide in the bathroom while the other engaged in sexual acts. Minor Victim worked out of various hotels, including the Red Roof Inn and Days Inn in Alexandria, Virginia.

21. Every few days, **GUZMAN-BEATO** would come to the hotels to collect the money. **GUZMAN-BEATO** would split the money 50/50 with the girls. On occasion **HERNANDEZ** would also collect money from the girls for **GUZMAN-BEATO**. At times, **GUZMAN-BEATO** and **HERNANDEZ** would come over in the same car together. **GUZMAN-BEATO** would also bring condoms, lubricant, and hygiene products for the girls to use. Minor Victim also recounted that **HERNANDEZ** occasionally drove Minor Victim to the store to pick up condoms and lubricant.

22. Minor Victim stated **GUZMAN-BEATO** posted ads on the internet utilizing pictures of young females that looked similar to the girls who were working for her. When men responded to the ads either via **GUZMAN-BEATO**'s phone number 347-317-0979 (hereinafter

"the 0979 number") or **GUZMAN-BEATO**'s email address, crzysex69@gmail.com, **GUZMAN-BEATO** would direct the men to the hotel and the specific room.

23. U.S. State Department records revealed that **GUZMAN-BEATO** was a naturalized U.S. Citizen from the Dominican Republic. On her 2016 U.S. Passport application, **GUZMAN-BEATO** provided the 0979 number and email address, crzysex69@gmail.com. Additionally, in 2019, law enforcement queried the 0979 number in various law enforcement and open source databases. The 0979 number was linked to several online escort advertisements for the Washington D.C. and New York areas. These advertisements were seen on various websites to include: www.escortindex.com, www.cityxguide.com, www.eroticmonkey.com, and www.yesbackpage.com. The advertisements depicted photos of unidentified females in erotic poses and listed both the 0979 number and email address of crzysex69@gmail.com as a method of contact for the above referenced escort advertisements.

24. Minor Victim stated **GUZMAN-BEATO** set up a text notification system where she would text the girls the words "Green Light" if the client was a normal customer and she would text the words "Red Light", which meant use caution. "Red Light" was used for situations when there was a new customer that had never been seen before, or **GUZMAN-BEATO** was unsure if it was law enforcement.

25. Minor Victim further recounted a time when **HERNANDEZ** paid Minor Victim for sexual intercourse while near the Prince George's County Plaza Mall. Thereafter, **HERNANDEZ** drove Minor Victim to a hotel in Virginia that **GUZMAN-BEATO** obtained for her to work in prostitution.

26. **RODRIGUEZ** continued to talk with Minor Victim on a regular basis. While Minor Victim was working in prostitution in a hotel room obtained by **GUZMAN-BEATO**,

**RODRIGUEZ** brought one of his friends over to the hotel to have commercial sex with Minor Victim.

27. On January 17, 2019, an HSI Task Force Officer, acting in an undercover capacity, texted the 0979 number to further investigate **GUZMAN-BEATO**'s involvement in prostitution and the sex trafficking of minors. During the conversation, the undercover officer set up a prostitution date. The user of the 0979 number provided the location for the prostitution date by texting *"6100 Richmond hwy Alexandria va 22303."* A query of this address ties back to the Days Inn in Alexandria, Virginia.

28. On January 24, 2019, law enforcement received records from the Red Roof Inn, Corporate Headquarters in response to a subpoena. Red Roof Inn records indicated that **GUZMAN-BEATO** was a guest at the Red Roof Inn property located at 5975 Richmond Hwy, Alexandria, VA on April 5, 2018 to April 7, 2018 and returned as an extended stay guest from April 18, 2018 to July 24, 2018. The reservation showed the following detailed information: Alexandrea Guzman (as spelled on the reservation), 712 W. 175th Street, New York, NY 10033, crzysex69@gmail.com, 347-317-0979 (the 0979 number).

29. A search warrant on **GUZMAN-BEATO's** Facebook account revealed her discussing prostitution activity with a female known to the United States. Specifically, on or about April 3, 2018, a conversation occurred between **GUZMAN-BEATO** and the female regarding "outcalls," a customer, and posting another ad. Based on your affiant's training and experience, an "outcall" is when a female engaged in prostitution goes to a customer's location for purposes of commercial sex. An "incall" is where a customer goes to the female's location for purposes of commercial sex.

30. Additionally, a search warrant on **GUZMAN-BEATO's** crzysex69@gmail.com email account revealed numerous receipts for various online websites known to host prostitution advertisements, including Backpage.com and cityxguide.

31. During the investigation, law enforcement obtained a cell phone belonging to Minor Victim. Minor Victim showed law enforcement photographs depicting **RODRIGUEZ** with Minor Victim. Specifically, Minor Victim took "selfies" to include images of **RODRIGUEZ** driving her, along with two men who paid her for commercial sex. Minor Victim also showed law enforcement pictures of **HERNANDEZ** driving Minor Victim, and showed the two of them together in a parking lot that Minor Victim recalled was by a hotel.

32. While analyzing what phone number **RODRIGUEZ** used, law enforcement has probable cause to believe **RODRIGUEZ** used phone number 240-801-1721 (the 1721 number) based on Minor Victim's statements and a review of her cell phone communications, where she discussed working in prostitution for one of **RODRIGUEZ's** friends. Additionally, law enforcement obtained a search warrant on **RODRIGUEZ's** Facebook account on March 8, 2019. A review of his Facebook search warrant return tied to **RODRIGUEZ** lists one of the verified cell phone numbers associated with him as the 1721 number.

33. Additionally, on or about January 29, 2019, law enforcement obtained a Pen Register Trap and Trace Device Order for **GUZMAN-BEATO's** WhatsApp account associated to her cell phone number 347-317-0979. The records obtained pursuant to the order show her communicating with **RODRIGUEZ** on the 1721 number 90 times. Also, cellular phone toll records obtained during the course of the investigation revealed **GUZMAN-BEATO**, utilizing the 0979 number, communicated with **RODRIGUEZ** on the 1721 number 259 times.

34. Law enforcement has probable cause to believe **HERNANDEZ** uses number 443-318-3394 (the 3394 number). A review of subscriber and toll records obtained on May 24, 2019 reveals that the 3394 number is registered to **Elvis Pichardo Hernandez**. Additionally, law enforcement obtained a search warrant on **HERNANDEZ's** Facebook account on March 8, 2019. A review of his Facebook search warrant return lists one of **HERNANDEZ's** verified cell phone numbers as the 3394 number. **HERNANDEZ** also provided the 3394 number to multiple friends on Facebook message communications.

35. A review of all phone records obtained during the investigation revealed **HERNANDEZ,** utilizing the 3394 number, communicated with **GUZMAN-BEATO** on the 0979 number on several occasions.

36. In early January 2019, Minor Victim was residing at home and attending school again in the Eastern District of Virginia. On or about January 4, 2019, **RODRIGUEZ** contacted Minor Victim through the communication platform WhatsApp telling her that he had a friend that she could make money with. **RODRIGUEZ** contacted Minor Victim using WhatsApp with the phone number 240-801-1721 (the 1721 number). **RODRIGUEZ** gave Minor Victim the number of his friend, later identified by law enforcement as **JOSE DAVID REYES-GONZALEZ** (hereinafter referred to as **REYES-GONZALEZ**). The number **RODRIGUEZ** provided for **REYES-GONZALEZ** was 240-877-6963 (the 6963 number). **RODRIGUEZ** told Minor Victim to contact **REYES-GONZALEZ**. **RODRIGUEZ** then instructed Minor Victim not to say anything to **REYES-GONZALEZ** about court or the police.

37. On or about January 5, 2019, Minor Victim told **RODRIGUEZ** over WhatsApp that **REYES-GONZALEZ** was asking for pictures of Minor Victim. **RODRIGUEZ** then sent pictures to Minor Victim of various females posing either naked or in lingerie type clothing.

**RODRIGUEZ** told Minor Victim not to tell **REYES-GONZALEZ** that he sent Minor Victim tryout/sample pictures.

38. Around the same time period, Minor Victim sent **REYES-GONZALEZ** 4 pictures of herself posed in a sexual manner over WhatsApp. In two of the photos, she is only wearing underwear and appears nude from the waist up.

39. After receiving the photographs from Minor Victim, **REYES-GONZALEZ** told her over WhatsApp messaging that he approved and that he would let her know when he has availability for her to work in prostitution.

40. On or about January 11, 2019, **REYES-GONZALEZ** asked Minor Victim over WhatsApp messaging if she could work in prostitution that weekend, and Minor Victim agreed. Minor Victim also asked **REYES-GONZALEZ** if he could buy the "chocolates" for her. Based on your affiant's training and experience, your Affiant believes that "chocolates" are a code word for condoms. Additionally, during an interview with Minor Victim, she confirmed that "chocolates" was a code word for condoms.

41. **REYES-GONZALEZ** told Minor Victim that she would get everything she needed at the work location. **REYES-GONZALEZ** then sent her the address of 9100 Elaine Court, Laurel MD, where she was to be on Sunday, January 13, 2019. On January 13, 2019, **REYES-GONZALEZ** told Minor Victim over WhatsApp messaging to contact him on his other cellphone at 929-476-1063.

42. In or around the same time period in January 2019, Minor Victim asked an acquaintance if she could go to his house in Maryland. The individual agreed to pick her up and take her to his house in Maryland. Minor Victim spent the night at the individual's house. The following day Minor Victim stated that she sent her location to **REYES-GONZALEZ** and he

11

then sent a man to pick her up. Minor Victim stated that around 7:00 pm a man in a large pickup truck came to get her. He then took her to get food and then took her to an apartment (located at 9102 Elaine Court, X2, Laurel, MD).

43. When they arrived at the apartment, Minor Victim stated that an individual later identified by law enforcement as **JUAN RUFINO MARTINEZ-DOMINGUEZ** (hereinafter referred to as **MARTINEZ-DOMINGUEZ**) was waiting for them at the door. Minor Victim stated **MARTINEZ-DOMINGUEZ** began to yell at her for being late and made her take a shower.

44. Minor Victim and **MARTINEZ-DOMINGUEZ** smoked hookah in the apartment that night. Later that night, **REYES-GONZALEZ** arrived at the apartment.

45. **MARTINEZ-DOMINGUEZ, REYES-GONZALEZ**, and Minor Victim ate dinner together at the apartment. **REYES-GONZALEZ** explained how the prostitution business worked with the card system and customers. **REYES-GONZALEZ** explained that if the card had a number on it, it was a $40 service, if it didn't have a number on it, it was a $50 service. White males and black males had to pay $50 and Hispanics had to pay $40. **REYES-GONZALEZ** stated they had a large organization.

46. Later that night, **MARTINEZ-DOMINGUEZ** and **REYES-GONZALEZ** engaged in sexual intercourse with Minor Victim.

47. On January 12, 2019, a BOLO ["Be on look out"] alert was published by law enforcement for Minor Victim as an endangered missing juvenile.

48. On January 14, 2019, law enforcement located and recovered Minor Victim from an apartment unit located at 9102 Elaine Court, #X2, Laurel, Maryland.

49. While recovering Minor Victim, law enforcement conducted a protective sweep of the residence. During this protective sweep, law enforcement recovered an adult female who was in an additional room in the apartment. (hereinafter Adult Victim # 1). A search warrant was obtained for the apartment.

50. Minor Victim and Adult Victim #1 were interviewed on multiple occasions by law enforcement. Minor Victim and Adult Victim #1 informed law enforcement that numerous men engaged in sexual activity with them in exchange for money while at the apartment in Maryland. Minor Victim and Adult Victim #1 identified photographs of **MARTINEZ-DOMINGUEZ** and **REYES-GONZALEZ** as individuals who were at the apartment coordinating the prostitution activities.

51. During their time at the apartment, Minor Victim and Adult Victim #1 saw **MARTINEZ-DOMINGUEZ** collect the money from customers and place the money in a red pouch he wore around his waist. The females were provided condoms, lubricant, and rubbing alcohol. They were informed the proceeds would be split 50/50.

52. Adult Victim #1 explained she knew she was going to the apartment to engage in prostitution but did not know the manner in which the prostitution operation would be conducted prior to arriving at the apartment. Adult Victim #1 stated she began working in prostitution around 10:00 am that day. She engaged in sexual activity with numerous men and felt sore and exhausted. She had not been provided a timely lunch or water. She expressed her concerns to **MARTINEZ-DOMINGUEZ** and he informed her she had to keep working until 11:00 pm. By 3:00 pm, **MARTINEZ-DOMINGUEZ** finally provided her with lunch in the kitchen. During that time, multiple customers were waiting in the living room area for additional prostitution dates. At one point during that day, Adult Victim #1 began to cry in the presence of a customer.

53.     Minor Victim and Adult Victim # 1 informed law enforcement that shortly before law enforcement arrived at the apartment, **MARTINEZ-DOMINGUEZ** and **REYES-GONZALEZ** were at the apartment but had stepped out to take out the trash.

54.     While law enforcement searched the apartment pursuant to a search warrant, evidence of prostitution was photographed and seized at the apartment, including night stands in two bed rooms containing condoms, lubricant, hand sanitizer, rubbing alcohol, and/or paper towels. Law enforcement also recovered multiple large boxes of condoms and baby wipes in the apartment, along with two clock timers and hand-written notes indicative of tabs being kept of customers. Additionally, law enforcement recovered cash tips and the cards described by Minor Victim and Adult Victim #1. Law enforcement also photographed a hookah lamp.

55.     Subsequent to the search warrant executed on the apartment located at 9102 Elaine Court, #X2, Laurel, Maryland, law enforcement recovered multiple cell phones from the apartment. Search warrants were obtained to search the cell phones. Based on a review of the phones and/or statements of Minor Victim and Adult Victim #1, the evidence indicates the phones belonged to Minor Victim, Adult Victim #1, and **MARTINEZ-DOMINGUEZ** (410-279-8136).

56.     Upon review of Minor Victim's cell phone, law enforcement discovered a video depicting Minor Victim and **MARTINEZ-DOMINGUEZ** smoking what appears to be hookah together inside of what appears to be the apartment where the Minor Victim was recovered by law enforcement.

57.     The cell phone associated with phone number 410-279-8136 appeared to belong to **MARTINEZ-DOMINGUEZ** because law enforcement found, for example, numerous images of what appear to be self-taken images of **MARTINEZ-DOMINGUEZ** in the phone, and

images of him and what appear to be his children and the mother of his children. Additionally, there was a photograph taken September 15, 2018 of an International Boarding Pass that depicted the full name of **MARTINEZ-DOMINGUEZ,** his date of birth, and Dominican Republic home address.

58. Law enforcement also found a wire transfer receipt in the phone above from **JOSE DAVID REYES-GONZALEZ** to a female in the Dominican Republic. Additionally, law enforcement recovered photographs and videos of **MARTINEZ-DOMINGUEZ** and **REYES-GONZALEZ** together. Law enforcement located and confirmed **REYES-GONZALEZ**'s identification from a picture on an HSI database.

59. Upon the recovery of Adult Victim #1 from the apartment in Maryland, she provided her cell phone, 786-675-2083, to law enforcement. When analyzing the contents of Adult Victim #1's cell phone, a WhatsApp contact for 240-970-2385 (the 2385 number) was saved on her phone under the name "**Cuido Negro**" with a photo image attached. Adult Victim #1 identified the individual in the photo to be the individual known to law enforcement as **MARTINEZ-DOMINGUEZ**.

60. When analyzing the contents of Adult Victim #1's phone, investigators found communications between Adult Victim #1 and 646-953-4283 (the 4283 number) where Adult Victim #1 reached out to the user of the 4283 number, who goes by the name **Chanel**. The communications began on or about January 5, 2019. Adult Victim #1 asked **Chanel** if she had any openings for Adult Victim #1 to work. **Chanel** then asked Adult Victim #1 to send pictures so that **Chanel** could see if Adult Victim #1 was suitable. Adult Victim #1 then sent 4 pictures of herself to **Chanel**, 3 of which she is only wearing panties.

61. **Chanel** approved, then Adult Victim #1 and **Chanel** decided that Adult Victim #1 would come to Maryland on January 13, 2019. **Chanel** told Adult Victim #1 to buy a plane ticket to arrive at Ronald Reagan Washington National Airport. **Chanel** informed Adult Victim she had to buy the ticket to make sure she could trust her.

62. On or about January 7, 2019, Adult Victim #1 sent **Chanel** a screenshot of her flight confirmation. Adult Victim #1's flight was reserved for American Airlines leaving Miami International Airport on January 13, 2019 at 8:30 am and arriving at Ronald Reagan Washington National Airport at 12:55 pm. Regan National Airport is located in the Eastern District of Virginia.

63. Additional messages indicate **Chanel** sent Adult Victim #1 the same address **REYES-GONZALEZ** sent Minor Victim, 9100 Elaine Court, Laurel, MD. Additionally, **Chanel** sent Adult Victim #1 the number 240-970-2385 (the 2385 number) to call once she arrived. Chanel informed Adult Victim #1 the "tools for work" would be provided to her upon her arrival.

64. Lease paperwork was obtained for the apartment at 9102 Elaine Court, #X2, Laurel, Maryland indicating that the lease holder for the apartment in question was **Fatima Ventura (VENTURA)**, who had been leasing the apartment since April 17, 2017. On the rental application, **VENTURA** provided email address, fatimaventura1723@gmail.com, as one of her points of contact. Law enforcement also obtained **VENTURA's** passport application. **VENTURA's** full name on her passport application is **FATIMA ZAYRA VENTURA PEREZ**. On the passport application, Ventura provided an email address as chanel1723@hotmail.com. Law enforcement has probable cause to believe that **VENTURA** is "Chanel."

65. Law enforcement obtained a court authorized search warrant for email address fatimaventura1723@gmail.com. Subsequent to the search warrant conducted on this email

16

account, law enforcement found an email communication sent from Charter Communications on April 26, 2017 regarding the installation of a digital phone and high speed internet. The service address and name listed for service on the email is, Zira Aleman, 11448 Dalian Ct #2, Flushing, New York 11356. Charter Communications stated in the email they would contact the resident 1 hour prior to the appointment via 646-953-4283 (the 4283 number). The 4283 number is the same number found on ADULT VICTIM #1's phone tied to **Chanel**.

66. Additionally, within the email account fatimaventura1723@gmail.com, were numerous images of females in lingerie type clothing posing in a sexually explicit manner or laying on a bed. There were also images that appeared to be combined for prostitution advertisements based on my training and experience. For example, there were images where two different females were combined and pictured in a split screen with words depicted on each side of the image stating where the female was from, i.e. Colombia, Puerto Rico.

67. Additionally, while viewing the email account fatimaventra1723@gmail.com, law enforcement found a screenshot of a video communication between **VENTURA** and **REYES-GONZALEZ** depicting both of their faces.

68. Based on the facts outlined above, there is probable cause to believe that between April 2018 to January 13, 2019, **DANIEL PALACIOS RODRIGUEZ ("RODRIGUEZ")**, also known as **"Daniel Hernandez," ALEXANDRA GUZMAN-BEATO ("GUZMAN-BEATO")**, also known as **"Sandra," ELVIS PICHARDO HERNANDEZ ("HERNANDEZ"), JOSE DAVID REYES-GONZALEZ ("REYES-GONZALEZ")**, and **JUAN RUFINO MARTINEZ-DOMINGUEZ ("MARTINEZ-DOMINGUEZ")**, also known as **"Cuido Negro**," engaged in the sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2),

(c) and 2, along with a conspiracy to engage in the sex trafficking of a minor in violation of 18 U.S.C. § 1594(c).

69. Based on the facts outlined above, there is also probable cause to believe that from on or about January 5, 2019 through January 13, 2019, **FATIMA VENTURA-PEREZ (VENTURA)**, also known as **"Chanel",** knowingly persuaded, induced, or enticed ADULT VICTIM #1 to travel in interstate commerce for purposes of prostitution in violation of 18 U.S.C. § 2422(a) and 2.

Jeremy Obie
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this 24th day of June 2019.

/s/
Michael S. Nachmanoff
United States Magistrate Judge

Honorable Michael S. Nachmanoff
United States Magistrate Judge